**E-FILED on** __8/12/08__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANK MELONZI, | No. C-01-20631 RMW |
| Petitioner, | |
| v. | ORDER GRANTING WRIT OF HABEAS CORPUS |
| SUE HUBBARD, Warden, | **[Re Docket Nos. 1, 33]** |
| Respondent. | |

Petitioner Frank Melonzi seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His habeas petition was originally denied by this court on January 3, 2005. On appeal, the Ninth Circuit Court of Appeals affirmed in part, but remanded so this court might determine in the first instance whether relief was warranted under the doctrine of collateral estoppel, which the Ninth Circuit deemed incipient in petitioner's double jeopardy claim. Petitioner argues on remand that the use of evidence of a charge on which he was earlier acquitted to secure a conviction on a different charge at a later trial violated the Double Jeopardy Clause of the Fifth Amendment. For the reasons set forth below, the petition for a writ of habeas corpus is granted.

# I. BACKGROUND

## A. Factual Background[1]

In 1998, petitioner was convicted in California state court on charges related to multiple incidents of sexual abuse of Alicia B. and Brittany N., both age nine at the time. At the time, petitioner was the live-in boyfriend of Alicia's mother. Both Alicia and Brittany provided substantially similar testimony concerning two incidents of lewd and lascivious conduct by petitioner that took place in October and December 1996 at Alicia's home.

The first incident took place on October 26, 1996, when Brittany spent the night at Alicia's house for a birthday party. Petitioner engaged in a "spinning game" with both girls during which each girl twice mounted petitioner's back and hung onto him with her arms around his neck. While spinning Alicia, petitioner inserted his fingers into her vagina. Similarly, when spinning Brittany, petitioner touched her vagina.

The second incident took place on December 6, 1996. Just before petitioner was to take the girls to an amusement park, they were playing a game of "Truth or Dare." After Brittany dared petitioner to kiss Alicia, petitioner pulled down Alicia's shorts and orally copulated her. When Alicia dared petitioner to do the same thing to Brittany, Brittany resisted and said "no." Despite Brittany's objection, petitioner held her down and forcibly orally copulated her. Petitioner did not stop until Alicia jumped on his back, attempting to pull the two apart.

Alicia further provided testimony of repeated incidents of sexual molestation occurring between December 1995 and December 1996. She stated that petitioner had touched her vagina with his finger approximately twenty times and with his tongue at least ten times. In one instance, petitioner forced Alicia to touch his penis with her hand. Later, medical evidence indicated that Alicia had abnormal genitalia. A doctor corroborated that her condition was the result of penetrating vaginal trauma, consistent with either penile or digital penetration occurring at least thirty times.

---

[1] This factual background is substantially derived from the opinion of the California Court of Appeal in this matter. Op. of Cal. Ct. of Appeal, Ex. D at 3 (Nov. 19, 2001).

**B.     Prior Proceedings**

On October 15, 1997 petitioner was charged in the Alameda County Superior Court with one count of lewd and lascivious acts by force upon a child, in violation of  Cal. Penal Code § 288(b)(1) (Count One), two counts of lewd and lascivious acts upon a child, in violation of Cal. Penal Code § 288(a) (Counts Two and Four), and one count, at issue here, of continuous sexual abuse of a child, in violation of Cal. Penal Code § 288.5 (Count Three).  A defendant is guilty of "continuous sexual abuse" if he engages in at least three acts of either "substantial sexual conduct" or "lewd or lascivious conduct" over a period of more than three months.  Cal. Penal Code § 288.5.  Shortly before trial, the charges were amended to include a charge of rape in violation of Cal. Penal Code § 261(a)(2) (Count Five).  Petitioner opted for a bench trial on these five counts and, in a general verdict, was acquitted of rape but convicted on the remaining four counts.  A motion for a new trial was then granted on the basis of ineffective assistance of counsel.  At the second trial, petitioner was initially charged with the same five counts, but the rape charge was dismissed.  During petitioner's second trial, evidence of the rape on which he was previously acquitted was introduced and the prosecution explicitly referred to the rape allegation in its closing arguments.  Rep. Tr., Ex. B, vol. 1 at 81, 130-31 (direct and cross-examination of Alicia); Rep. Tr., Ex. B, vol. 4 at 723 (closing arguments).  Subsequently, the jury found him guilty on the four remaining counts, including the charge of continuous sexual abuse, and on July 15, 1998, petitioner was sentenced to twenty-two years in state prison.

On January 4, 2000 the California Court of Appeal affirmed petitioner's conviction but remanded for resentencing.  Petitioner's sentence was subsequently reduced to twenty years, calculated as follows: a base term of 16 years for count three (continuous sexual abuse), a concurrent 6-year term for count two (lewd and lascivious acts), and consecutive 2-year terms for counts one (lewd and lascivious acts by force) and four (lewd and lascivious acts).  Op. of Cal. Ct. of Appeal, Ex. D at 3.  Petitioner appealed again and this time the California Court of Appeal affirmed the sentence.  Petitioner then twice filed petitions for discretionary review in the California Supreme Court, first on February 16, 2000 and again on January 2, 2002.  Both petitions were denied.  Ex. H (Petition for Review and Summary Denial).

ORDER GRANTING WRIT OF HABEAS CORPUS — No. C-01-20631 RMW
VN                                                                    3

Having exhausted state remedies, petitioner sought federal habeas relief. In his habeas petition, petitioner raised a number of claims already made in state court, including the claim, relevant here, that his Fifth Amendment right to be free from double jeopardy was violated. Specifically, petitioner argued that because he previously had been found not guilty of rape, "his conviction of [continuous sexual abuse], based on the same alleged acts, violated the Double Jeopardy Clause of the Fifth Amendment." Pet. for Habeas Corpus at 5. This court denied his petition in all respects. *Melonzi v. Hubbard*, No. CV-01-20631 (N.D. Cal. Jan. 3, 2005). With regard to the double jeopardy claim, this court reasoned that under *Blockburger v. United States*, 284 U.S. 299 (1932), the charge of rape (Cal. Penal Code § 261(a)(1)) and the charge of continuous sexual abuse of a child (§ 288.5) were different offenses for purposes of double jeopardy because each requires proof of an element that the other does not. *Melonzi v. Hubbard*, No. CV-01-20631. Thus, this court held that acquittal on the charge of rape did not preclude prosecution for continuous sexual abuse. On appeal, the Court of Appeals for the Ninth Circuit affirmed in part, but stated that petitioner "did not clearly present to the district court his collateral estoppel theory, which was incipient in his double jeopardy claim." *Melonzi v. Hubbard*, 229 Fed. App'x. 494 (9th Cir. 2007). The court therefore remanded for determination in the first instance whether relief was warranted under the doctrine of collateral estoppel.

## II. ANALYSIS

Petitioner contends that because he was acquitted on the charge of rape at his first trial, the doctrine of collateral estoppel, incipient in the protections afforded by the Double Jeopardy Clause, barred the prosecution from attempting to reprove the alleged rape at his second trial. Petitioner argues that the introduction of rape evidence at his second trial placed him in double jeopardy because the jury at his second trial could have used the allegation of rape as one of the three underlying acts needed to prove continuous sexual abuse, *see* Cal. Penal Code § 288.5, even though he already had been acquitted of rape. Petitioner urges that on this basis, the conviction for continuous sexual abuse must be set aside. Supplemental Mem. of P. & A. at 20.

### A. Standard of Review

This court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).

### B. Collateral Estoppel

#### 1. Clearly Established Federal Law

Collateral estoppel is clearly established federal law.  It stands for the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).  In other words, "if the Government's case depends on facts found in [the] defendant's favor by an acquittal, collateral estoppel precludes the Government from attempting to reprove those facts."  *United States v. Powell*, 632 F.2d 754, 757 (9th Cir. 1980) (citing *Sealfon v. United States*, 332 U.S. 575, 578-80 (1948)).  This doctrine was recognized as a fundamental ingredient of the Fifth Amendment's protection against double jeopardy at least as far back as *United States v. Oppenheimer*, 242 U.S. 85 (1916), and the Supreme Court has affirmed it a number of times.  *See Ashe*, 397 U.S. at 443; *Harris v. Washington*, 404 U.S. 55 (1971).  Thus, collateral estoppel is clearly established federal law as determined by the Supreme Court.

### 2.      Application of Collateral Estoppel

Analyzing collateral estoppel claims involves three steps.  "First, the issues in the two actions are identified [to] determine whether they are sufficiently similar and material to justify invoking the doctrine." *United States v. James*, 109 F.3d 597, 600 (9th Cir. 1997).  "Second, we examine the first record to determine whether the issue was fully litigated." *Id*.  "Finally, from our examination of the record, we ascertain whether the issue was necessarily decided." *Id*.

First, it is necessary to identify the issues and decide if they are sufficiently similar to justify invoking collateral estoppel.  Issues have been deemed sufficiently similar to invoke collateral estoppel when they are predicated on the same underlying conduct.  *See United States v. Ford*, 371 F.3d 550, 555-56 (9th Cir. 2004) ("Because the objective activity requirement is identical under both subsections, we conclude that the [issues are] sufficiently similar and material to satisfy the first prong of our collateral estoppel analysis."); *United States v. Schwartz*, 785 F.2d 673, 681 (9th Cir. 1986). *Schwartz* involved a quid pro quo scheme in which the defendants allegedly agreed to award administration of a union benefits plan (of which they were trustees) to a particular insurance company in exchange for help influencing certain union matters in their favor. *Id*. at 675-76.  Based on this alleged conduct, the defendants were charged with twelve counts of wire fraud and two counts of "accepting or soliciting a thing of value with the intent to influence benefit plan trustees," in violation of 18 U.S.C. § 1954. *Id*. at 676.  The question faced by the Ninth Circuit was whether collateral estoppel barred the latter charges (violating § 1954) after the defendants were acquitted on the former charges (wire fraud).  Despite the fact that two wholly different statutory violations were at issue, the court decided they were sufficiently similar to justify invoking collateral estoppel, reasoning that "[t]he benefit plan corruption alleged [in the latter two counts] was, after all, part of the overall scheme to defraud alleged in [the counts for wire fraud]." *Id*. at 681.  In other words, the court decided that the issues were sufficiently similar because both the wire fraud charges and the § 1954 charges relied on the same underlying conduct.

The issues are likewise similar here because both rely on the same underlying conduct.  The relevant issue in petitioner's first trial was whether he had engaged in sexual intercourse by force with a person not his spouse.  Cal. Penal Code § 261 (defining rape as "an act of sexual intercourse

1 accomplished with a person not the spouse of the perpetrator . . . against a person's will by means of
2 force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or
3 another"). The relevant issue in petitioner's second trial was whether he had committed at least three
4 acts of either "substantial sexual conduct" or "lewd or lascivious conduct" over a period of more
5 than three months. Cal. Penal Code § 288.5 (defining continuous sexual abuse of a child).[2]
6 "Substantial sexual conduct" is in turn defined as "penetration of the vagina or rectum of either the
7 victim or the offender by the penis of the other." Cal. Penal Code § 288.5. Consequently, the way
8 that the California legislature has defined "substantial sexual conduct" permits the same act of
9 forcible sexual intercourse underlying a rape charge to be a predicate act supporting a charge of
10 continuous sexual abuse. Thus, the two charges rely on the same underlying conduct and are
11 sufficiently similar to justify invoking collateral estoppel.

12 Next the court must decide whether the issue at petitioner's first trial was fully litigated. The
13 court notes that petitioner was charged with one count of rape at his first trial, Clerk's Tr., Ex. A,
14 vol. 1 at 67, evidence was adduced to prove the alleged rape, Rep. Tr., Ex. C at 46, 49-50, and the
15 judge in petitioner's first trial issued a not guilty verdict on that charge. Rep. Tr., Ex. C at 119.
16 Respondent also concedes that the issue was fully litigated. Resp. at 4:4-5. Thus, it is undisputed
17 that the issue of rape was fully litigated at petitioner's first trial.

18 Finally, the court must decide whether the relevant issue was necessarily decided in
19 petitioner's favor at his first trial. Where, as here, the judgment of acquittal is based upon a general
20 rather than special verdict, a reviewing court must "examine the record of a prior proceeding, taking
21 into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a
22 rational jury could have grounded its verdict upon an issue other than that which the defendant seeks
23 to foreclose from consideration." *Ashe*, 397 U.S. at 444 (citing Mayers & Yarbrough, *Bix Vexari:*

---

[2] Respondent tries to frame the issues somewhat differently, stating that the issue at petitioner's first trial was "whether petitioner had forcibly raped Alicia" and that the issue at petitioner's second trial was "whether [he] was a resident child molester." Resp. at 4:2-4. Thus, respondent asserts, the issues are insufficiently similar. *Id*. However, respondent does not elaborate this point, nor does it articulate any basis on which the issues should be deemed insufficiently similar to justify invoking collateral estoppel.

ORDER GRANTING WRIT OF HABEAS CORPUS — No. C-01-20631 RMW
VN                                                                 7

*New Trials and Successive Prosecutions*, 74 Harv. L. Rev. 1, 38-39).[3] The petitioner in *Ashe* allegedly had been involved in the robbery of seven participants in a poker game. *Ashe*, 397 U.S. at 437-38. He went to trial on the charge of robbing one of the participants and the jury acquitted him due to "insufficient evidence" that he was one of the robbers. *Ashe*, 397 U.S. at 439. Six weeks later, he was brought to trial again, this time for the robbery of another participant in the poker game. *Id*. at 439. In holding that the second prosecution violated the rule of collateral estoppel, the Court explained that the "single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." *Id*. at 445.

Likewise, the only rationally conceivable issue in dispute before the jury at petitioner's first trial (with respect to the rape charge) was whether petitioner had engaged in sexual intercourse with Alicia. In acquitting petitioner of rape at his first trial, the court indicated that it:

> has doubts about count five, the rape allegation, because the only evidence that the defendant did penetrate the victim's vagina with his penis comes from hearsay. And the fact that the medical evaluator would say that the penetration is not inconsistent with penile penetration does not overcome the hearsay problem as far as I am concerned. So therefore I find him not guilty of count five.

Rep. Tr., Ex. C at 119. It is apparent from this general verdict that the acquittal on the charge of rape was not based on an absence of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury," Cal. Penal Code § 261 (defining elements of rape), and the fact that Alicia was not petitioner's spouse could not rationally have been in dispute. The only rationally conceivable issue in dispute was whether petitioner had in fact engaged in sexual intercourse with Alicia. The court's verdict makes clear that petitioner was acquitted of rape because there was insufficient evidence that sexual intercourse had taken place. Thus, this issue necessarily was decided in petitioner's favor at his first trial.

However, respondent points out that the trial court "expressly noted for the record that it acquitted petitioner because the evidence to support the offense consisted entirely of hearsay" arguing that "petitioner was acquitted not because the evidence to support the charge was

---

[3] The same approach is "mandated in interpreting the trial judge's findings as for interpreting a jury verdict." *United States v. Carbullido*, 307 F.3d 957, 962 (9th Cir. 2002).

ORDER GRANTING WRIT OF HABEAS CORPUS — No. C-01-20631 RMW
VN                                                            8

insufficient, but because it was not necessarily reliable." Resp. at 3:7-10. Respondent seems to suggest that the judge's finding of not guilty (on the rape charge) at petitioner's first trial was not a verdict that triggers double jeopardy. Similar arguments were addressed and rejected by the Supreme Court in *Smalis v. Pennsylvania*, 476 U.S. 140 (1986). In *Smalis*, a Pennsylvania trial court sustained a criminal defendant's demurrer at the close of the prosecution's case-in-chief. *Smalis*, 476 U.S. at 140. The appeals court quashed the prosecution's appeal on the basis of double jeopardy, but the Pennsylvania Supreme Court reversed, holding that a demurrer was not the functional equivalent of an acquittal (and thus did not trigger double jeopardy) because a defendant who demurs at the close of the prosecution's case "elects to seek dismissal on grounds unrelated to his factual guilt or innocence." *Id*. Similarly, respondent here appears to argue that petitioner was acquitted on grounds unrelated to factual guilt or innocence. However, the Supreme Court rejected any such arguments in *Smalis*, stating that "the trial judge's characterization of his action cannot control the classification of the action under the Double Jeopardy Clause." *Id*. at 144 n. 5 (quoting *United States v. Scott*, 437 U.S. 82, 96 (1978)). Thus, the comments made by the judge at petitioner's first trial do not change the fact that the judge's finding of not guilty was a verdict triggering the Double Jeopardy Clause.

Because all three prongs of the collateral estoppel analysis are met, the state was barred from relitigating the issue of sexual intercourse at petitioner's second trial and in so doing, placed petitioner in double jeopardy.

### 3. Harmless Error

"[W]hen a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." *Lara v. Ryan*, 455 F.3d 1080, 1085 (9th Cir. 2006). There is, however, a "limited exception" where "reversal may not be required if [the court] is absolutely certain that the jury relied upon the legally correct theory to convict the defendant." *Id*. (internal quotations omitted). This exception recognizes that "most constitutional errors can be harmless." *Washington v. Recuenco*, 548 U.S. 212, 218 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)).

To convict petitioner of continuous sexual abuse, the jury had to find three or more instances of "substantial sexual conduct" or "lewd or lascivious conduct" over a period of more than three months. Cal. Penal Code § 288.5 (defining continuous sexual abuse). As noted earlier, "substantial sexual conduct" includes sexual intercourse. *Id*. Thus, when rape evidence was introduced at petitioner's second trial, the jury could have relied on the alleged rape as a predicate act supporting a conviction for continuous sexual abuse, even though petitioner had been acquitted of rape at his first trial. Importantly, because continuous sexual abuse is a "continuous-course-of-conduct" crime, California law does not require that the prosecution elect or the jury identify the specific acts it believes establish continuous sexual abuse. *People v. Higgins*, 9 Cal. App. 4th 294, 301 (1992) ("So-called continuous-course-of-conduct crimes, generally committed against the same victim who sustains cumulative injury, require neither allegations nor unanimous findings of specific acts."). Accordingly, the jury in petitioner's second trial returned a general verdict of guilty on the charge of continuous sexual abuse without identifying the specific acts on which the conviction was predicated. Clerk's Tr., Ex. A, vol. 2 at 407 (Verdict of Jury). Based on the record before this court, it is impossible to be "absolutely certain" that the jury relied upon a legally permissible theory – one that did not include the alleged rape as a predicate act – in its conviction for continuous sexual abuse. Indeed, respondent does not contend otherwise. Thus, the introduction of rape evidence at petitioner's second trial was not harmless error.

### C. Remedy

"If the district court finds a habeas corpus petition to be meritorious, it may order the prisoner released outright, although this action is rare." Jeffrey G. Adachi et al., California Criminal Law Procedure & Practice § 45.33 (CEB 2008). In most situations it is appropriate to "grant the writ subject to the state's right to retry the prisoner within a specified length of time." *Id*.; *see McHenry v. California*, 447 F.2d 470 (9th Cir. 1971) (giving 60 days to commence a retrial on the conviction set aside in a habeas proceeding). Therefore, it appears that the appropriate remedy is to grant the writ subject to respondent's right to commence a retrial within sixty days. If respondent chooses not to retry petitioner on the charge of continuous sexual abuse, or if he is acquitted in such a retrial, the writ will become fully effective. *McHenry*, 447 F.2d at 470. If the writ becomes fully effective,

petitioner should be released from custody after serving his prison sentence for those convictions not challenged here.[4] *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (writ of habeas corpus may be used to obtain future, rather than immediate, release). If, however, petitioner is again convicted on the charge of continuous sexual abuse, and such conviction is brought to the attention of this court, this order may be vacated. *McHenry*, 447 F.2d at 470.

### III. ORDER

For the foregoing reasons, the petition for writ of habeas corpus is granted, subject to the state's right to commence a retrial within sixty (60) days on the charge of continuous sexual abuse. If the state chooses not to commence a retrial within that time, or if petitioner is acquitted in such a retrial, petitioner is ordered released from custody after serving his prison sentence for those convictions not challenged here.

DATED:     8/11/08

RONALD M. WHYTE
United States District Judge

---

[4] As noted earlier, the remaining convictions not being challenged here appear to carry a combined sentence of 10 years. Op. of Cal. Ct. of Appeal, Ex. D at 3 (concurrent 6-year term for count two, consecutive 2-year term for count one, and consecutive 2-year term for count four). Because petitioner was sentenced on July 15, 1998, he may be eligible for immediate release. However, it is unclear from the record before this court when petitioner first began serving his sentence.

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

John J. Jordan            jjordanesq@aol.com
Walter K. Pyle            walt@wfkplaw.com

**Counsel for Defendants:**

Nanette Sue Winaker       nanette.winaker@doj.ca.gov
Margo J. Yu               margo.yu@doj.ca.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     8/12/08                                    /s/ MAG
                                                  **Chambers of Judge Whyte**