**United States District Court**
For the Northern District of California

1

2

3

4          **E-FILED on** __11/15/12___

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12  FRANK MELONZI,                          No. C-01-20631 RMW

13              Petitioner,

14      v.                                  ORDER GRANTING WRIT OF HABEAS
                                            CORPUS
15  SUE HUBBARD, Warden,

16              Respondent.

17

18

19          Petitioner Frank Melonzi ("Melonzi") seeks a writ of habeas corpus pursuant to 28 U.S.C.

20  § 2254.  The case is now on its second remand from the Ninth Circuit Court of Appeals with

21  instructions to this court "to determine whether the introduction of [certain] rape evidence was

22  harmless error in accordance with the analysis set forth in *Brecht*."  *Melonzi v. Hubbard*,

23  339 Fed. Appx. 699, 702 (9th Cir. 2009).  The court has reviewed the record and briefing of the

24  parties including their supplemental briefs on the harmless error issue and concludes that Melonzi's

25  petition should be granted.

26

27

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. BACKGROUND

**A.    Factual Background[1]**

In 1998, Melonzi was convicted in California state court on charges of sexual abuse of Alicia B. and Brittany N., both age nine.  At the time, petitioner was the live-in boyfriend of Alicia's mother.  Both Alicia and Brittany provided substantially similar testimony concerning two incidents of lewd and lascivious conduct by petitioner which took place in October and December 1996 at Alicia's home.

The first incident occurred on October 26, 1996, when Brittany spent the night at Alicia's house after a birthday party.  Melonzi engaged in a "spinning game" with the girls during which each girl twice mounted Melonzi's back and hung onto him with her arms around his neck.  While spinning Alicia, Melonzi inserted his fingers into her vagina.  Similarly, when spinning Brittany, Melonzi touched her vagina.

The second incident took place on December 6, 1996, during a game of "Truth or Dare."  After Brittany dared Melonzi to kiss Alicia, he pulled down Alicia's shorts and orally copulated her.  When Alicia dared Melonzi to do the same thing to Brittany, Brittany resisted and said "no."  Despite Brittany's objection, Melonzi held her down and forcibly orally copulated her.  Melonzi did not stop until Alicia jumped on his back, attempting to pull the two apart.

Alicia further provided testimony of repeated incidents of sexual molestation occurring between December 1995 and December 1996.  She stated that Melonzi had touched her vagina with his finger approximately twenty times and with his tongue at least ten times.  In one instance, petitioner forced Alicia to touch his penis with her hand.  Later, medical evidence indicated that Alicia had abnormal genitalia.  A doctor corroborated that her condition was the result of penetrating vaginal trauma, indicating that it could be consistent with anywhere from "more than one" occasion to thirty or more occasions.

Melonzi denied touching either of the girls in a sexual manner and speculated that someone else must be responsible for the physical evidence of abuse.  He further testified that Alicia often

---

[1]  This factual background is substantially derived from the opinion of the California Court of Appeal in this matter.  Op. of Cal. Ct. of Appeal, Ex. D at 3 (Nov. 19, 2001).

1   lied to get attention. Several members of Alicia's family testified for the defense, including her

2   mother and two brothers.

3       **B.      Prior Proceedings**

4       On October 15, 1997, Melonzi was charged in the Alameda County Superior Court with one

5   count of lewd and lascivious acts by force upon a child relating to the "truth or dare" incident with

6   Brittany, in violation of Cal. Penal Code § 288(b)(1) (Count One); two counts of lewd and

7   lascivious acts upon a child relating to the spinning incident with Alicia and Brittany, in violation of

8   Cal. Penal Code § 288(a) (Counts Two and Four); and one count, of particular concern here, of

9   continuous sexual abuse of a child relating to Alicia, in violation of Cal. Penal Code § 288.5 (Count

10  Three). A defendant is guilty of "continuous sexual abuse" if he engages in at least three acts of

11  either "substantial sexual conduct" or "lewd or lascivious conduct" over a period of more than three

12  months. Cal. Penal Code § 288.5. Shortly before trial, the charges were amended to include a

13  charge of rape, in violation of Cal. Penal Code § 261(a)(2) (Count Five).

14      Melonzi opted for a bench trial on these five counts and, in a general verdict, was acquitted

15  of rape but convicted on the remaining four counts. The trial court then granted Melonzi's motion

16  for a new trial on the basis of ineffective assistance of counsel. At the second trial, Melonzi was

17  initially charged with the same five counts, but the rape charge was dismissed. During that jury

18  trial, the prosecution introduced evidence of the rape on which Melonzi was previously acquitted

19  and explicitly referred to the rape allegation on several occasions. RT., Ex. B, vol. 1 at 6:16-20

20  (opening statement); 82:10-16, 87:11-14, 130:8-131:16 (direct and redirect examination of Alicia);

21  186:12-187:13 (direct examination of Brittany); vol. 2 at 257:6-259:3 (direct examination of

22  Brittany's mother); vol. 4 at 731:24-733:26, 776:11-778:6 (closing arguments). The jury found

23  Melonzi guilty of the four remaining counts, including the charge of continuous sexual abuse. On

24  July 15, 1998, the trial judge sentenced Melonzi to twenty-two years in state prison.

25      The California Court of Appeal affirmed Melonzi's conviction on January 4, 2000, but

26  remanded for re-sentencing. On remand, the trial judge reduced Melonzi's sentence to twenty years,

27  calculated as follows: a base term of sixteen years for Count Three (continuous sexual abuse); a

28  concurrent six-year term for Count Two (lewd and lascivious acts); and consecutive two-year terms

*United States District Court*
*For the Northern District of California*

for Counts One (lewd and lascivious acts by force) and Four (lewd and lascivious acts). Op. of Cal. Ct. of Appeal, Ex. D at 3 (Nov. 19, 2001). Melonzi appealed again, and this time the California Court of Appeal affirmed the sentence. Melonzi then unsuccessfully sought discretionary review in the California Supreme Court.

Having exhausted his state remedies, on July 9, 2001, Melonzi filed with this court for relief on various theories. This court denied his petition, and he appealed. On June 15, 2007, the Ninth Circuit affirmed the judgment in part but remanded to this court to consider Melonzi's collateral estoppel claim, which he "did not clearly present to the district court." *Melonzi v. Hubbard*, 229 Fed. Appx. 494, 495 (2007).

On remand, this court granted Melonzi's petition for habeas relief. The court found that Melonzi was subjected to double jeopardy when the state court allowed the introduction of evidence relating to the rape allegations in his second trial, a charge of which Melonzi had been earlier acquitted. The court further held that this violation was not harmless under the standard from *Lara v. Ryan*, 455 F.3d 1080 (9th Cir. 2006), which required the underlying conviction to be set aside unless the court "is absolutely certain that the jury relied upon the legally correct theory to convict the defendant." *Id*. at 1085. Respondent appealed this decision to the Ninth Circuit Court of Appeals on September 5, 2008. While the appeal was pending, the United State Supreme Court overruled the *Lara* test in favor of the standard announced in *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993). *See Hedgpeth v. Pulido*, 555 U.S. 57, 59-62 (2008). The *Brecht* test requires a reviewing court to uphold the conviction absent a finding that the constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 637. The Ninth Circuit thus remanded the case to this court for a determination of whether the introduction of the rape evidence constituted harmless error under the *Brecht* standard.

## II. ANALYSIS

Under *Brecht*, an error is harmless unless it had a "substantial and injurious effect" on the jury's verdict. 507 U.S. at 623, 637. In *Brecht*, the Supreme Court found that the unconstitutional admission of the petitioner's post-*Miranda* silence was harmless. *Id.* at 638-39. In reaching its conclusion, the Court noted that the State's references to the petitioner's silence were infrequent. *Id.*

United States District Court
For the Northern District of California

at 639. The Court further found that the other evidence of guilt was "if not overwhelming, certainly weighty." *Id.* The constitutionally erroneous admission of evidence is not harmless, however, simply because there is other evidence sufficient to support a conviction. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). In making the harmless error inquiry, the court must review the record to determine what effect the error had or reasonably may have had upon the jury's decision. *Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009).

Melonzi argues that the state's introduction of rape evidence to support his conviction under California Penal Code § 288.5 was not harmless error. Respondent counters that the introduction of the rape evidence was harmless because there was sufficient other evidence to support a conviction under § 288.5. Specifically, Alicia testified that Melonzi had touched her vagina and orally copulated her more than ten times each. RT, Ex. B, vol. 1 at 86:19-87:2, 104:17-105:2.

A defendant violates § 288.5 when he or she either resides with a child or has recurring access to a child under the age of 14 and, over a period of not less than three months, "engages in three or more acts of substantial sexual conduct . . . or three or more acts of lewd or lascivious conduct" with said child. § 288.5(a). The jury need only "unanimously agree that the requisite number of acts occurred [, but] not on which acts constitute the requisite number." § 288.5(b). The version of § 288.5(c) in effect at the time that petitioner was charged provided that "[n]o other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative." Therefore, although neither party discusses this issue, it appears that no act charged in Counts One, Two, or Four (the "truth or dare" and "spinning" incidents forming the basis for the lewd and lascivious acts charges) could have served as a predicate act necessary to prove the offense of continuous sexual abuse of a child under § 288.5(c).

The testimony at trial focused primarily on the "spinning" and "truth or dare" incidents relating to Counts One, Two, and Four, which, as explained, could not serve as predicate acts under the continuous sexual abuse charge. Cal. Penal Code § 288.5(c). The only other act of sexual misconduct examined in detail at trial was the alleged rape, which the jury should not have considered as a predicate offense because petitioner had been acquitted of that charge. In recounting the evidence proffered to

**United States District Court**
For the Northern District of California

1  support the charge under § 288.5, the California Court of Appeals stated, "Alicia related that [Melonzi]

2  touched her vagina approximately 20 times with his fingers and with his tongue at least 10 times.  On

3  one occasion he penetrated her vagina with his penis, and, on another, forced her to touch his penis with

4  his hand."  Op. of Cal. Ct. of Appeal, Ex. D at 3.  The question is whether the jury's consideration of the

5  rape evidence had a "substantial and injurious effect" on its decision to convict Melonzi of continuous

6  sexual abuse.  *See Brecht*, 507 U.S. at 623, 637.

7        The rape evidence received considerable attention at trial.  The prosecutor not only

8  questioned Alicia regarding the rape, but also elicited testimony from other witnesses concerning

9  Alicia's statements about the rape.  The following exchange took place on direct with Alicia:

10      Q:    When Frank's private part touched your private part, did he put it inside of you?

11      A:    A little.

12      Q:    Did it hurt?

13      Q:    Yeah.

14      Q:    And did it hurt your vagina?

15      A:    Yeah.

16  RT, Ex. B, vol. 1 at 81:10-16.  The prosecutor also highlighted the rape evidence in argument.  In her

17  opening statement, the prosecutor stated, "She'll . . . tell you there were times when the defendant took

18  her in that bedroom . . . and he would take his penis and put it inside of her vagina."  RT, Ex. B, vol. 1

19  at 6:16-20.  Similarly, in closing, the prosecutor told the jury: "But the truth is, he did put his penis

20  inside of her."  RT, Ex. B, vol. 4 at 777:27-28.

21        The potential prejudicial effect of the rape evidence was exacerbated by the prosecutor's

22  statement that, while she had an "obligation to put on [truthful evidence,]" the defense attorney's main

23  role was to "to protect his client and advocate on behalf of his client"; thus implying that the role of the

24  defense attorney might have resulted in the presentation of a defense that was less than candid:

25         Mr. Chettle [defense counsel] talked to you that the prosecutor and the defense
    are both advocates.

26

27         Well, there are two roles that the lawyers have in this courtroom.  Because I
    represent the State, that is my ethical obligation and statutory and constitutional
    obligation to put on the truth, the evidence before you to ensure that the truth is exposed

28      for the jury, the ultimate triers of the facts.

1         And M. Chettle's job in the courtroom is to protect his client and advocate on

2   behalf of his client. We don't stand on equal ground. Our roles are not equal in this
    courtroom.

3   RT, Ex. B, vol. 4 at 761:22-762:5.

4         The prosecutor then followed this statement with a discussion of the credibility of the witnesses.

5   In talking about the rape evidence, she made the comment: "But the truth is, [the defendant] did put his

6   penis inside of her, when she wasn't silent or feeling under attack, particularly involving her mother, she

7   disclosed that to people, not just to her friend Brittany, but to the police, to the district attorney's office,

8   to the other responsible adults who were here obtaining the truth from her." *Id.* at 777:27-778:6.

9         Although Alicia responded in the affirmative to the prosecutor's statement that Melonzi engaged

10  in other sexual acts "about twenty times," none of those alleged acts was described with comparable

11  specificity to the "spinning" and "truth or dare" incidents relating to Counts One, Two, and Four, or the

12  rape allegation. The rape evidence was the most discussed potential predicate act for the § 288.5

13  conviction. It also had the likelihood to be the most prejudicial. Although Alicia testified that the rape

14  occurred only once, the prosecutor introduced evidence that Alicia had told others that Melonzi had

15  inserted his penis into her vagina on more than one occasion, maybe five times. *See, e.g.,* RT, Ex. B,

16  vol. 2 at 258:11-15. While oral copulation and digital penetration of a child are surely detestable and

17  inexcusable acts, allegations of child rape are of a degree beyond and could certainly have made the

18  other allegations more credible in the minds of the jurors. Under the circumstances, the consideration

19  of the facts surrounding the alleged rape may have improperly been considered by the jury as one of the

20  predicate acts necessary to establish the continuous sexual abuse charge. The rape evidence also may

21  have enhanced the jury's evaluation of the credibility of the statements concerning the other alleged acts

22  of sexual wrongdoing.

23        Unlike in *Brecht*, where the prosecution's references to the impermissible evidence were

24  "infrequent, comprising less than two pages of the 900-page trial," 507 U.S. at 639, here the prosecutor

25  frequently referenced the rape evidence, including in her opening statement and closing argument. In

26  *Brecht*, there was other "overwhelming" or "weighty" evidence supporting the charge. *Id.* In contrast

27  here, the rape testimony was not merely cumulative of other evidence supporting Melonzi's conviction

28  under § 288.5, but rather it was the most serious among the acts alleged. Although it is possible that the

United States District Court
For the Northern District of California

1 conviction here *could* have been supported by the testimony regarding the other acts constituting sexual

2 abuse, it seems likely that the jury was substantially influenced by the rape evidence. *See Merolillo v.*

3 *Yates*, 663 F.3d 444, 456 (9th Cir. 2011) (finding harmful error when the evidence introduced in

4 violation of the Confrontation Clause was not cumulative of other evidence presented at trial).  It seems

5 probable that the jury believed that the rape evidence satisfied at least one predicate act under § 288.5.

6 The court holds that the introduction of the rape evidence had a "substantial and injurious effect" on the

7 jury's verdict and therefore did not constitute harmless error. *See Brecht*, 507 U.S. at 623, 637.

8 **III.  ORDER**

9      For the foregoing reasons, the petition for writ of habeas corpus is granted vacating the

10 conviction for continuous sexual abuse of a child in violation of California Penal Code § 288.5. and

11 the sentence imposed, subject to the State's right to commence a retrial within sixty (60) days on the

12 § 288.5 charge.  If the State elects not to commence a retrial within that time, the charge must be

13 dismissed and Melonzi re-sentenced accordingly.

15 DATED:  November 15, 2012

16 *Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge